CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
7/30/2025
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JOYCE D.,[1] | ) |
| | ) Civil Action No. 6:24-cv-00030 |
| Plaintiff, | ) |
| | ) **REPORT &** |
| v. | ) **RECOMMENDATION** |
| | ) |
| FRANK J. BISIGNANO,[2] | ) By: C. Kailani Memmer |
| Commissioner of Social Security, | ) United States Magistrate Judge |
| | ) |
| Defendant. | ) |

Plaintiff Joyce D. ("Joyce") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; 42 U.S.C. §§ 1381–1383f. Joyce alleges that Administrative Law Judge Eric Eklund ("ALJ") erred by (1) failing to sufficiently explain the how he reconciled a moderate restriction in concentration, persistence and pace with his omission of corresponding limitations in her residual functional capacity ("RFC") determination and (2) assessing her subjective allegations of physical impairments. (*See* ECF No. 12.)

Having considered the administrative record, the parties' filings, and the applicable law, I respectfully recommend the presiding District Judge **REMAND** the Commissioner's final decision for further consideration.

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Frank J. Bisignano became the Acting Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should be substituted for Martin O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Joyce failed to demonstrate that she was disabled under the Act.[3] *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citation modified); *see also Biestek v. Berryhill*, 587 U.S. 97, 139 (2019) (emphasizing that the standard for substantial evidence "is not high"). While substantial evidence is a somewhat deferential standard, the Court does not "reflexively rubber-stamp an ALJ's findings." *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017).

"In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro*, 270 F.3d at 176 (quoting *Craig*, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period for not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work; instead, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

In contrast, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" where the court is "left to guess about how the ALJ arrived at his conclusions"). The ALJ must sufficiently articulate his findings such that the district court can undertake meaningful review. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

## **CLAIM HISTORY**

Joyce filed for Title II DIB and Title XVI SSI on March 25, 2022, alleging disability beginning June 11, 2021. R. 14. Her claim was denied initially on August 23, 2022, and again upon reconsideration on March 9, 2023. R. 62, 63, 82, 92. On March 21, 2023, Joyce requested a hearing, which was held by telephone on November 2, 2023. R. 31–57. Bruce Martin testified as an impartial vocational expert. R. 33. On December 18, 2023, the ALJ issued an "Unfavorable Decision" analyzing Joyce's claim under the familiar five-step process[4] finding that Joyce was not under a disability from June 11, 2021, through December 18, 2023, and denying her claim for benefits. R. 14–26.

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); *Heckler v. Campbell,* 461 U.S. 458, 460-62, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

At the first step, the ALJ found Joyce had not engaged in substantial gainful activity since June 11, 2021, the alleged onset date. R. 16. At the second step, the ALJ found Joyce has the following severe impairments: facet arthropathy, degenerative joint disease of the right knee, diabetes mellitus with neuropathy, obesity, and depressive disorder. *Id.*

At the third step, the ALJ found that none of Joyce's musculoskeletal impairments or combination thereof medically equals a listed requirement, specifically considering listings 1.15, 1.16, 1.18, and 11.04. R. 17–18. Regarding Joyce's mental impairments, the ALJ found Joyce had a moderate limitation in concentrating, persisting, or maintaining pace. R. 18. The ALJ found Joyce had mild limitations in understanding, remembering, or applying information, interacting with others, and in adapting and managing herself. *Id.*

The ALJ determined that Joyce retained the RFC to perform light work[5] with the exception that she never kneels. R. 19. "She can occasionally stoop, crouch, crawl, and climb ladders, ropes, and scaffolds. She can less than occasionally operate foot controls with the right lower extremity. She cannot work around moving machinery or unprotected heights. She is limited to simple, routine, and repetitive tasks." *Id.*

---

[5] "Light work" is defined as follows:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

At the fourth step, the ALJ determined that Joyce could not perform her past relevant work as a cashier checker and fast-food team leader. R. 24. The vocational expert testified that Joyce's past relevant work would be precluded by the limitations in her RFC. 24. However, at the fifth step, the ALJ found Joyce could perform jobs that exist in significant numbers in the national economy, such as folding machine operator, hand packager, and inspector. R. 25. Thus, the ALJ concluded a finding of "not disabled" was appropriate. *Id*. Joyce appealed the ALJ's decision, and on May 7, 2024, the Appeals Council denied her request for review. R. 1. This appeal followed.

## FACTS

### I. Joyce's Background and Testimony

At the time of the November 2, 2023, hearing, Joyce was 51 years old. R. 35. She has a high school education. R. 36.

Joyce testified she has not worked since June 11, 2021. R. 38. When Joyce worked at Walmart from 2014 to 2021, the heaviest item she had to lift was dog food weighing about fifteen pounds. R. 50. Similarly, when she was a shift leader for John Nucomb Enterprises from 2008 to 2013, the heaviest items she had to lift were between ten and twenty pounds. *Id*.

Joyce testified that the most significant and limiting problems at the time of the hearing were her back pain and depression. R. 38. As for the back pain, she participated in physical therapy, received one injection for her back pain, and took Ibuprofen, Tylenol and Gabapentin. R. 38–39. Joyce testified that the medications eased her back pain a little but her back still hurt so badly that her legs would go numb. R. 40. She also testified that she used a medicinal cream for the degenerative issues in her right knee. R. 45–46. She testified that she had a "little pinched fracture" in her right foot that caused sharp pain

5

when she walked and drove. R. 46. She claimed she could not wear tennis shoes because of the fracture. *Id.*

Joyce testified that her most difficult, painful activities were chores around the house and grocery shopping. R. 43. She tried to grocery shop for her father and wash his clothes, but her back pain made it difficult. R. 42. She also drove her children to school and her husband to work at the beginning and end of the day. R. 37.

She testified that she tried to walk and do small exercises at home but found it difficult to do in significant amounts because of back pain and numbness in her legs. R. 42. She estimated she could stand in one spot for approximately five minutes before she had to sit back down due to the pain. R. 47. She testified that she had to sit for five to fifteen minutes before getting back up and moving around. *Id.*

Regarding Joyce's mental health, she testified that she was on medication for her anxiety and depression. R. 40. She was hospitalized in April of 2021 after her children were unable to wake her up. R. 41. She testified she attempted appointments at Horizon Behavioral Health once a month and had her caseworker call and check in with her every three months. *Id.* She testified that she tried to keep her mind occupied to not think about her pain. R. 44. She estimated she spent eight to sixteen hours a day on her phone or the computer and four to six hours watching television. *Id.* She testified she liked to read small books on an application on her phone. *Id.*

## II.     Medical History for the Relevant Period[6]

On April 22, 2021, Joyce presented to the Emergency Department ("ED") at Central Virginia Baptist Hospital due to a possible overdose of Wellbutrin. R. 313. She

---

[6] For purposes of this report and recommendation, the "relevant period" is June 11, 2021 (Joyce's alleged disability onset date) through December 18, 2023 (date of ALJ's decision); *see Johnson v. Barnhart*, 434 F.3d 650, 656 (4th Cir. 2005) ("To qualify for DIB, [the claimant] must prove that she became disabled

was discharged on April 21, 2021. R. 312. Dr. Kotapati noted that Joyce was not at imminent risk of harm to herself or others at discharge. R. 315. Dr. Kotapati diagnosed Joyce with Major Depressive Disorder, Type-2 Diabetes Mellitus, and Hypertension in her discharge summary. R. 315–16.

On June 2, 2021, Joyce presented to Anita Abotsi at Horizon Behavioral Health. R. 837. Joyce reported going on a one month leave from work following her hospitalization in April. R. 840. Abotsi noted that Joyce exhibited poor judgment. R. 842.

On June 12, 2021, Joyce presented to Omar Elkhamra, M.D. at Ortho Virginia. R. 1256. Joyce reported that, on June 11, 2021, she began experiencing atraumatic onset of lower back pain and numbness in her lower extremities. R. 1257. Dr. Elkhamra noted significant tenderness to palpation of the lumbar spine and left paraspinal muscles along with increased pain with flexion and extension. R. 1258. Imaging of Joyce's spine showed mild degenerative disc disease ("DDD"), minimal anterolisthesis of L4-L5, and mild neuroforaminal narrowing at L5-S1. *Id.*

On June 22, 2021, a second M.D., Dr. Kevin Hicks reviewed Joyce's lumbar MRI. R. 377. He noted the MRI revealed mild circumferential disc budging at L4-L5 and L5-S1 with prominent facet arthropathy at L4-L5. *Id.*

On July 12, 2021, Dr. Omar Elkhamra reviewed and explained the MRI results to Joyce. R. 1250. Dr. Elkhamra diagnosed Joyce with arthropathy of the lumbar facet joint and DDD. R. 1249.

On August 16, 2021, Joyce presented to the care of Islam Saleh, M.D. at Ortho Virginia. R. 352. Joyce reported lower back pain radiating to her lower extremities. R.

---

prior to the expiration of her insured status."); 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a).

353. Dr. Saleh noted that Joyce had failed to improve with conservative measures of pain management and therapy. R. 352. Dr. Saleh scheduled a L5-S1 interlaminar epidural steroid injection ("ILESI") for therapeutic purposes. *Id*. Joyce received the lumbar ILESI at L5-S1 on August 31, 2021. R. 1224.

On October 26, 2021, Joyce presented to Michele Morgan at Horizon Behavioral Health. R. 731. Joyce reported her mother had died on October 11, 2021. *Id*. Morgan noted that Joyce presented with increased anxiety and depression. R. 736. Morgan increased Joyce's Lexapro to 15mg daily and started Joyce on hydroxyzine for anxiety. *Id*.

On January 13, 2022, Joyce presented to the care of Richard Stowers, M.D. at Lynchburg Family Medicine. R. 462. Dr. Stowers refilled Joyce's naproxen and cyclobenzaprine because the ILESI and physical therapy did not ease her pain. R. 463.

On May 27, 2022, Joyce presented to Sara Boyd at Horizon Behavioral Health. R. 632. Joyce reported that she was struggling with occupational instability, depression, anxiety, and medical concerns. *Id*.

On August 10, 2022, Joyce presented to Ortho Virginia for a therapeutic injection in her right leg. R. 1182. That same day Dr. Saleh gave Joyce a refill of Gabapentin and a prescription of Diclofenac. R. 1183, 1218. Joyce reported improvement on Gabapentin but that she stopped taking it due to the prescription running out. R. 1218–19.

On March 23, 2023, Joyce presented to the care of Cory Edwards, M.D. for left knee pain. R. 1271. Dr. Edwards noted severe tenderness to palpation on the anterior as well as posterior pain. R. 1273. Dr. Edwards referred Joyce to radiology to rule out deep vein thrombosis in her left leg. R. 1271.

On April 20, 2023, Joyce presented to Lynchburg Family Medicine for an X-Ray of her right knee and ankle. R. 1278. Veronica Rigler, P.A. noted that on palpation of Joyce's

8

right knee, Joyce reported tenderness of the whole knee and lateral ankle. R. 1279. The X-Ray of Joyce's right ankle showed moderate hindfoot and midfoot degenerative changes. R. 1280. The X-Ray of her right knee showed moderate tricompartment degenerative joint disease. R. 1281.

On May 17, 2023, Joyce presented to the care of Peter Helvie, M.D. at Ortho Virginia for evaluation of the bilateral knees. R. 1216. Dr. Helvie reported Joyce had a positive straight leg test, but her medial joint line was tender to palpation. *Id.* He reviewed the X-Rays of the right knee dated April 20, 2023, and found "[v]ery mild degenerative changes with tiny spurring in medial aspect." R. 1217.

On July 12, 2023, Dr. Islam Saleh noted that Joyce's bilateral lower extremity pain was most consistent with diabetic neuropathy. R. 1207. Dr. Saleh noted that Joyce's lumbar MRI revealed moderate facet arthropathy at L4-L5 and a small right paracentral annular fissure at L5-S1. R. 1208.

On September 7, 2023, Joyce reported to Michele Morgan at Horizon Behavioral Health that she was having difficulty coping with her chronic pain. R. 1306. Joyce's treatment plan was to continue taking escitalopram, bupropion, trazodone, and hydroxyzine. R. 1311.

### III. Medical Opinions

On August 7, 2022, Robert McGuffin, M.D., a medical consultant with the Disability Determination Service, reviewed Joyce's record and determined that Joyce was not disabled. R. 71. He opined that Joyce had the following severe impairments: disorders of the skeletal spine, obesity, and diabetes mellitus. R. 67. He further opined that Joyce's limitations would not prevent her from occasionally lifting and/or carrying 20 pounds or frequently lifting and/or carrying 10 pounds, sitting about 6 hours in an 8-hour workday,

9

or standing and/or walking about 6 hours in an 8-hour workday. R. 69. He indicated that because of Joyce's back pain, she should never climb ladders, ropes, or scaffolds and should avoid unprotected heights. R. 69–70. He determined that a light RFC was proper. R. 70.

On August 22, 2022, Leslie Montgomery, PhD, a psychological consultant with Disability Determination Service, opined that neither Joyce's depressive, bipolar and related disorders nor her anxiety and obsessive-compulsive disorders are severe impairments. R. 67. She determined that Joyce had mild limitations on her ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.*

On March 9, 2023, William Rutherford, M.D., a medical consultant with Disability Determination Service, opined that Joyce had the following severe impairments: disorders of the skeletal spine, diabetes mellitus, and peripheral neuropathy. R. 86. He further opined that Joyce's limitations would not prevent her from occasionally lifting and/or carrying 20 pounds or frequently lifting and/or carrying 10 pounds. R. 88. He indicated that she likely has the RFC for light duty work, but additional information was needed. *Id.* He noted that the evidence needed for a full medical evaluation was not available due to Joyce's failure to cooperate, but that his decision overall was consistent with the prior decision. R. 89.

On March 9, 2023, Jo McClain, PsyD, a psychological consultant with Disability Determination Service, opined that neither Joyce's depressive, bipolar and related disorders nor her anxiety and obsessive-compulsive disorders were severe. R. 87. She determined that Joyce had mild limitations on her ability to understand, remember, or

10

apply information; and concentrate, persist, or maintain pace. *Id*. She determined that her assessment was consistent with the original decision. *Id*.

## DISCUSSION

### I.     The ALJ's RFC Analysis

Joyce argues that the ALJ failed to adequately explain how he reconciled his finding of a moderate limitation in concentrating, persisting, or maintaining pace at Steps 2 and 3 with omission of corresponding limitations in the RFC determination. (*See* ECF No. 12.) Joyce further argues that this error was prejudicial because it materially compromised the hypotheticals posed to the vocational expert. *Id* at 9–10. The Commissioner counters that the RFC was both thoroughly explained and supported by substantial evidence. (ECF No. 13 at 10.)

Pursuant to Social Security Ruling ("SSR") 96-8p, an "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Dana M. v. Comm'r of Soc. Sec.*, No. 4:20-CV-00059, 2022 WL 340576, at *12 (W.D. Va. Feb. 4, 2022) (citing *Mascio v. Colvin*, 780 F.3d 632, 637–40 (4th Cir. 2015)). A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. In evaluating the severity of mental impairments at steps two and three of the sequential evaluation process, the regulations provide for rating the degree of functional limitation in each of four broad mental functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). These functional areas can be rated either none, mild, moderate, marked, or extreme. 20 C.F.R. §§ 404.1520a(c)(4),416.920a(c)(4). The ALJ's findings in these functional areas are used to assess the severity of the claimant's

impairment at step two, to determine whether a Listing is satisfied at step three, and finally, in assessing the RFC. 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).

At Steps 2 and 3, the ALJ concluded that Joyce had moderate limitations in concentrating, persisting, or maintaining pace. R. 18. However, the only mental limitation included in Joyce's RFC is the limitation of "simple, routine, and repetitive tasks." R. 19. The ALJ's hypothetical question to the vocational expert included the same language. R. 51–52.

As noted in *Mascio*, an ALJ cannot summarily "account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work," because "the ability to perform simple tasks differs from the ability to stay on task." *Mascio*, 780 F.3d at 638. In *Shinaberry v. Saul*, the Fourth Circuit clarified that there is no "categorical" obligation for an RFC to specifically include a limitation in "concentration, persistence or pace" if one has been found so long as the ALJ explains "why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation" in the claimant's RFC. *Shinaberry*, 952 F.3d 113, 120–21 (4th Cir. 2020).

In *Shinaberry*, the court affirmed the District Court's decision that the ALJ had "sufficiently explained why the mental limitation to simple, routine, and repetitive tasks accounted for Shinaberry's borderline intellectual disability and her moderate limitations in her concentration, persistence or pace," distinguishing *Mascio* on the grounds that in *Mascio*:

> the ALJ ignored (without explanation) Mascio's moderate limitation in her ability to maintain her concentration, persistence, or pace when he conducted the function-by-function analysis and said nothing about Mascio's mental limitations in the hypothetical posed to the vocational

12

> expert. Because the ALJ ... gave no explanation for these omissions, a remand was in order.

*Id.* at 121 (citation modified). Thus, the lack of a specific limitation in the RFC related to the mental limitation concerning "concentration, persistence or pace" is not, by itself, an indication of error. However, the ALJ was required to explain why no limitations regarding "concentration, persistence or pace" were included in the RFC. The ALJ failed to do so in his decision which warrants remand.

Further exacerbating the issue, the ALJ discounted state agency medical opinions that Joyce had just *mild* limitations in her mental functioning and instead found the evidence supported greater limitations in Joyce's ability to concentrate, persist, or maintain pace by reiterating his Step 2 and 3 conclusions that Joyce had moderate limitations in this area. *See* R. 23–24. Thereafter, the ALJ noted Joyce's ability to complete daily activities and a general lack of noted issues in her memory, attention, concentration, or cognition during medical examinations. *Id.* Interestingly, the same record evidence was cited by the ALJ when he made his initial finding that Joyce had moderate limitations in her ability to concentrate, persist or maintain pace. *See* R. 18. As such, the Court would expect further discussion as to why Joyce's moderate limitations in concentrating, persisting, or maintaining pace does not warrant additional limitations in her RFC. Simply listing the same evidence without providing analysis as to why additional limitations were not required in Joyce's RFC regarding her ability to concentrate, persist, or maintain pace does not satisfy the requirement for explanation under *Mascio*.

"Perhaps the ALJ can explain why [Joyce's] moderate limitation in concertation, persistence, or pace at step three does not translate into a limitation in [Joyce's RFC]." *Mascio*, 780 F.3d at 638. But because the ALJ did not do so here, the Court cannot

13

ascertain if it was appropriate to exclude additional limitations from the RFC and, thus, from the hypothetical tendered to the vocational expert. For these reasons, remand is appropriate.

## II.　The ALJ's Assessment of Joyce's Allegations

Joyce also claims the ALJ failed in its assessment of Joyce's subjective allegations regarding her physical impairments. Because the Court has determined that the above issues warrant remand, the Court declines to further address this remaining claim of error. However, upon remand, the ALJ should take such claim of error into consideration as the ALJ will be able to reconsider and re-evaluate the evidence in toto as part of the reconsideration. *See Hancock v. Barnhart*, 206 F.Supp.2d 757, 763 n.3 (W.D. Va. 2002) (noting the ALJ's prior decision has no preclusive effect, as it is vacated, and the new hearing is conducted de novo).

## CONCLUSION

The ALJ insufficiently explained his mental RFC determination and how the limitations he imposed correlate with his findings. These errors frustrate judicial review and, accordingly, this case should be remanded to the Commissioner for further proceedings. *See* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). Therefore, I respectfully recommend that the presiding District Judge **REVERSE** and **REMAND** the Commissioner's final decision denying Joyce's DIB and SSI claims and **DISMISS** this case from the Court's active docket.

## NOTICE TO PARTIES

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Norman K. Moon, United States District Judge.

The Clerk is directed to serve copies of this Report and Recommendation to all counsel of record and any unrepresented parties.

Entered: July 30, 2025

C. Kailani Memmer
United States Magistrate Judge